UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DOMINIC LITTLESHIELD, as the guardian for legal matters of B.W.E., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RAPID CITY; BINCY THANKACHAN, in her official and individual capacities,<br><br>Defendants. | 5:24-CV-05088-ECS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY |

This matter is before the Court on Dominic Littleshield's Second Amended Complaint alleging an illegal search and seizure of minor B.W.E. conducted by the City of Rapid City and forensic investigator Bincy Thankachan. Doc. 22. Littleshield seeks money damages pursuant to 42 U.S.C. § 1983, attorney's fees pursuant to § 1988, and "[a] declaratory judgment that defendants' policy and practice is unconstitutional." Id. at 2, 6. Pending are Defendants' Motion for Summary Judgment, Doc. 24, and Plaintiff's Motion for Partial Summary Judgment on Liability, Doc. 31.

## I. Facts[1]

On December 17, 2022, police were dispatched to the Ramkota Hotel in Rapid City based on a report of a sexual assault of a twelve-year-old girl. Doc. 29 ¶ 1. The twelve-year-old advised police that B.W.E., who was two years older, forcibly had sex with her after she told him to stop. Id. ¶ 2; Doc. 33 ¶ 3; Doc. 34-1 at 9:5–9; Doc. 40 ¶ 2.

B.W.E. was born on June 10, 2008. Doc. 33 ¶ 1. Dominic Littleshield is B.W.E.'s guardian for legal matters. Id. ¶ 2. B.W.E. was taken to the Rapid City police station for questioning. Doc. 29 ¶ 3. B.W.E. confessed to having sex with the twelve-year-old girl after she told him to stop during his interview with police. Id. ¶ 6. Thereafter, law enforcement presented a Pennington County magistrate judge with an Affidavit in Support of a Search Warrant. Doc. 28-6. This affidavit was signed by law enforcement near midnight at "2355 hours" on December 17, 2022. Id. at 5. Police sought a warrant to search the hotel room where the assault occurred and court authority to search "the person" of B.W.E. for evidence of the alleged rape. Id.

A Pennington County magistrate judge signed a search warrant on December 17, 2022, that authorized a search of B.W.E. including "trace evidence to include a DNA sample of the suspect" and a swab of his penis. Docs. 28-6 at 1. The search warrant was silent as to who would perform the search of B.W.E's body. Doc. 33 ¶ 4.

B.W.E.'s search took place at the Rapid City Public Safety Building at 300 Kansas City Street in Rapid City. Id. ¶ 23. The City used the Public Safety Building to detain B.W.E. before searching him. Id. ¶ 24. B.W.E. was not under adult court supervision and confined or detained

[1] For readability, the Court omits most quotation marks when quoting from the parties' statements of undisputed material facts or responses to those statements. Citations to deposition testimony reflect the page number of the transcript.

in a prison or jail. Id. ¶ 25. Before the search, he was at the Best Western Ramkota in Rapid City. Id.

Bincy Thankachan is a female forensic examiner and Rapid City employee. Id. ¶¶ 6–7. Thankachan was notified near midnight on December 17, 2022, of a male subject involved in a suspected rape that needed to be examined. Doc. 28-3 at 6. The male subject was B.W.E. A police report states Thankachan performed a forensic examination upon B.W.E. beginning "at approximately 0030 hours." Id.

At the time B.W.E. was examined, Defendants did not employ any male forensic examiners because the females who applied were the most qualified applicants for the position based on education, training, and experience. Doc. 29 ¶ 25. After the Belt[2] case was served upon Defendants, in response to the pending litigation, Defendants trained male police officers to perform forensic examinations involving full male nudity. Id. ¶ 26. Defendants allege they would prefer to have trained and certified forensic examiners performing the examinations to ensure credibility and validity of the examinations. Id. ¶ 27.

Thankachan possesses a Bachelor of Science degree in Forensic Science and a Master of Science degree in Forensic Medicine. Id. ¶ 9. At the time of B.W.E.'s examination, she possessed roughly 4 years and 4 months of field experience in forensic examinations and participated in numerous continuing education courses. Id. ¶ 10. Thankachan participated in Rapid City's accreditation with the Commission on Accreditation for Law Enforcement Agencies as well as the forensic testing laboratory's accreditation under ANSI National Accreditation Board. Id. ¶ 11.

[2] Belt v. City of Rapid City, No. 5:24-CV-05021-RAL, 2025 WL 2783498 (D.S.D. Sep. 30, 2025).

A portion of B.W.E.'s forensic examination was videoed through a male police officer's body camera; this officer was present during the examination. Id. ¶ 12; Doc. 33 ¶ 8. Before B.W.E. became nude, a female detective came in to drop off paperwork and promptly left. Doc. 29 ¶ 23. According to B.W.E., Thankachan asked that he take off his underwear, and thereafter she photographed his genitals. Id. ¶ 15. B.W.E. estimated he was completely nude for "a good three minutes." Id. ¶ 14.

After Thankachan took photos of B.W.E.'s genitals, she instructed him to face forward and put his hands up, and, while wearing gloves, used her fingers to grab his penis and commence swabbing for DNA. Id. ¶ 16; Doc. 28-2 at 12:25, 15:1; Doc. 33 ¶ 10; Doc. 40 ¶ 16. Thankachan "swabbed the tip and the area around that," and "all the way around [his] penis." Doc. 33 ¶ 11–12 (citation omitted) (alteration in original). B.W.E. testified that he felt the manner in which she grabbed his penis was unprofessional because she did not use a utensil to hold his penis. Doc. 29 ¶ 17; Doc. 28-2 at 14:13–23; Doc. 40 ¶ 17. B.W.E. testified that the DNA swab touching the tip of his penis "kind of hurt." Doc. 29 ¶ 18; Doc. 40 ¶ 18. He testified that the pain stopped once the swab left his penis. Doc. 29 ¶ 18; Doc. 40 ¶ 18. B.W.E. felt that the swabbing was not intended to hurt him; rather, he believed Ms. Thankachan was just attempting to extract DNA. Doc. 29 ¶ 19. B.W.E. testified that Thankachan said nothing unprofessional while she performed the penile swab. Id. ¶ 20; Doc. 28-2 at 14:7–16:14; Doc. 40 ¶ 20. B.W.E. testified that he was humiliated by the experience because a woman performed the penile swab, because his genital area was being grabbed, and because of the pain. Doc. 29 ¶ 21; Doc. 33 ¶ 14; Doc. 34-1 at 19:1–6; Doc. 40 ¶ 21. Once Thankachan finished swabbing B.W.E.'s penis, she promptly permitted him to redress. Doc. 29 ¶ 22.

From July 2019 through June 20, 2024, Rapid City conducted other cross-gender searches similar to B.W.E.'s. Doc. 33 ¶ 15; Doc. 43 ¶ 15. The City was aware of Eighth Circuit law that cross-gender strip searches are unconstitutional in the absence of exigent circumstances. Doc. 33 ¶ 17. The City testified that it stopped the practice of cross-gender forensic examinations when it was litigated in Belt. Id. ¶ 18; Doc. 34-4 at 35:11–24; Doc. 43 ¶ 18. This change is not final, it is only "[p]ending the decision of the courts." Doc. 33 ¶ 21 (citation omitted). Two cross-gender forensic examinations were conducted after Belt's filing. Id. ¶ 19. The City produced no evidence that in the eighteen months since Belt was filed, its change to using men to perform the examination cost it any money, degraded in any way swab quality, led to any person accused of a crime attempting to use as a defense that his penis was swabbed by an officer unqualified to do so, that any prosecution has been compromised in any way, or that the City has suffered any loss or harm because of having men instead of women swab suspects' penises. Doc. 33 ¶ 22.

## II. Summary Judgment Standard

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To survive a motion for summary judgment, "the nonmoving party must establish the existence of a genuinely disputed material fact by either 'citing to particular parts of materials in the record' or 'showing that the materials cited do not establish the absence . . . of a genuine

dispute." Rockboy v. Charles Mix Cnty., No. 4:24-CV-04093-ECS, 2026 WL 323333, at *3 (D.S.D. Feb. 6, 2026) (quoting Fed. R. Civ. P. 56(c)(1)(A)–(B) (ellipsis in original)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248). The evidence "must be sufficiently probative to 'permit a finding in [the nonmoving party's] favor on more than mere speculation, conjecture, or fantasy.'" First Dakota Nat'l Bank v. Old Republic Nat'l Title Ins., No. 4:21-CV-04190-VLD, 2024 WL 4818717, at *5 (D.S.D. Nov. 18, 2024) (quoting Musolf v. J.C. Penney Co., 773 F.3d 916, 918 (8th Cir. 2014) (alteration in original)).

"The judge's function during summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rockboy, 2026 WL 323333, at *3 (quoting Anderson, 477 U.S. at 249). In doing so, the Court "review[s] the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." Musolf, 773 F.3d at 918 (citing Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012)).

## III. Discussion

Littleshield argues "[a] strip search by a woman of a man, in the absence of exigent circumstances, violates the Fourth and Fourteenth Amendment prohibition against unreasonable searches and seizures." Doc. 22 ¶ 9 (citing Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1008 (8th Cir. 2007)). 42 U.S.C. § 1983 "provides a cause of action against any 'person' who, acting 'under color of' state law, deprives the plaintiff of 'rights, privileges, or immunities

secured by the Constitution.'" Belt v. City of Rapid City, No. 5:24-CV-05021-RAL, 2025 WL 2783498, at *3 (D.S.D. Sept. 30, 2025) (quoting the statute). And so, Littleshield brings a § 1983 claim against the City of Rapid City and Bincy Thankachan, the forensic examiner, because B.W.E.'s Fourth and Fourteenth Amendment rights were allegedly violated when Thankachan "required [him] to remove his pants and underpants and expose his penis so that [she] could hold his penis in her hand," in order to conduct the penile swab, all without any exigent circumstances requiring a female to do so. Doc. 22 ¶ 9–11. Defendants argue the search was reasonable. Doc. 25 at 6. Defendants also argue exigent circumstances were present to justify B.W.E.'s examination. Id. at 16-18.

The Fourth Amendment[3] provides the right to be secure in one's own person. U.S. Const. amend IV. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968) (quoting Union Pac. R.R. v. Botsford, 141 U.S. 250, 251 (1891)). The Fourth Amendment allows law enforcement to conduct reasonable searches. Id. (citing Elkins v. United States, 364 U.S. 206, 222 (1960)).

Reasonableness "is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559 (1979). "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. "The usual rule is that a reasonable search is one supported by probable cause and for which a warrant has been issued."

[3] The Fourth Amendment is incorporated into the Fourteenth Amendment's Due Process Clause. See Mapp v. Ohio, 367 U.S. 643 (1961).

United States v. Crawford, No. 4:22-CR-40052-KES, 2022 WL 10373332, at *5 (D.S.D. Oct. 18, 2022) (citing California v. Carney, 471 U.S. 386, 390 (1985)).

No one here disputes the existence of probable cause to search B.W.E. or the existence of a warrant authorizing B.W.E.'s penile swab. See generally Docs. 25, 32, 39, 44; see Doc. 40 ¶ 4. Rather, Littleshield argues B.W.E.'s penile swab was unreasonable because it was conducted by someone of the opposite sex. Doc. 22 ¶¶ 9–11. Under our precedent, "strip searches are to be conducted by an officer of the same sex as the suspect 'in an area as removed from public view as possible without compromising legitimate security concerns' and to 'be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion.'" Robinson v. Hawkins, 937 F.3d 1128, 1137–38 (8th Cir. 2019) (quoting Richmond, 490 F.3d at 1008).

Defendants argue that women searching men is "less concerning than men searching women." Doc. 25 at 7. That is Defendants' conclusion after reading Timm v. Gunter, an Eighth Circuit case permitting opposite-sex pat searches and observations of nude male prisoners at the Nebraska State Penitentiary. Timm v. Gunter, 917 F.2d 1093, 1096–1103 (8th Cir. 1990). But different security measures between female and male prisoners were justified in Timm by a disparate risk-level at the men's prison, "not solely because of their gender." Id. at 1102–03 (citation omitted and emphasis removed); see Doc. 39 at 9. The Timm court expressly avoided reliance on sex-based stereotypes to arrive at its decision. So, its holding cannot be reconciled with Defendants' proposition that male standards should differ because "a cross-gender [search] of a woman is by definition sexual." Doc. 25 at 7 (quoting I. Bennett Capers, Unsexing the Fourth Amendment, 48 U.C. DAVIS L. REV. 855, 876 (2015)).

Perhaps more to the point, Timm did not discuss strip searches. So, finding that men are somehow less deserving of the right to a strip search conducted by their same sex—a right

declared in Richmond—would be a strange result when the suspect in Richmond was male. Richmond, 490 F.3d at 1008.

The proper inquiry is whether Richmond and Robinson mandate a finding that the examination B.W.E. underwent was unconstitutional. In Robinson, a male officer conducted an unreasonable strip search when he pushed a female suspect "against an oily tractor-trailer in an open-air parking lot, touched the inside and outside of her vagina and her anus as a male officer watched, and yelled insults and expletives at her during the search." Robinson, 937 F.3d at 1137. In Richmond, no cross-gender search occurred. Rather, a male officer grabbed a contraband-containing tissue protruding from a male arrestee's buttocks inside his motel room. Richmond, 490 F.3d at 1004–05.

Defendants distinguish these "strip searches" from B.W.E's penile swab—a "forensic examination," because a forensic examination is more "akin to a medical procedure." Doc. 25 at 13–15. Littleshield rejects the comparison because Thankachan is not "medical personnel," nor did she provide "medical services" to B.W.E. Doc. 39 at 11. Rather, she acted with the purpose of obtaining evidence to be used against B.W.E., i.e., a search. Id.

But whatever Thankachan's motives, similarities do exist between medical procedures and forensic examinations, such as scientific methodology and precision, and the specialized training of the professionals conducting them. See, e.g., Doc. 52-1. Parallels can be drawn between retrieving a tissue from a suspect's anus (Richmond) and the swabbing for DNA around B.W.E.'s penis, but Richmond and Robinson concerned off the cuff strip searches conducted by officers at a crime scene. The Court believes these cases are distinguishable from the circumstances of this case, which involved a forensic examination performed after law enforcement obtained a search warrant to investigate a recent allegation of sexual assault. Under

the facts of this particular case, the Court believes the forensic examination performed on B.W.E. was reasonable. Indeed, "[t]he Fourth Amendment requires only reasonableness, not that police departments structure their work force to avoid any possibility of cross-gender searches." Belt, 2025 WL 2783498, at *6.

Even if the Eighth Circuit did intend to place forensic examinations inside the ambit of those holdings, however, exigent circumstances existed on the night of B.W.E.'s search because only one City employee was trained to do the swab—Thankachan. As noted by Judge Lange in Belt, evidence obtained by a penile swab in a sexual assault investigation is "easily disposable" and under the suspect's control, so a search of this nature needs to be performed as soon as possible. Belt, 2025 WL 2783498, at *5.

Regardless, Littleshield argues no exigent circumstances existed because the male policeman in the room could have performed the examination, as evidenced by how the City has now trained male officers to do so. Doc. 39 at 4–6. But this Court does not accept the premise that the male officer in the room could have performed the forensic examination on the evening in question. Again, the only individual trained at the time to perform this examination was Thankachan. This was the reality faced by law enforcement after the alleged assault involving B.W.E. was reported. On the night in question, Thankachan risked the loss or destruction of DNA evidence if she forewent the swab, a result this Court holds was not required under the Fourth Amendment. Accord Belt, 2025 WL 2783498, at *5; see also Harris v. Miller, 818 F.3d 49, 63 (2d Cir. 2016) (per curiam).

Littleshield argues that the City's failure to train a male does not satisfy the definition of "exigent circumstances" under the Prison Rape Elimination Act (PREA). Doc. 32 at 18–19; see 28 C.F.R. § 115.5. But this case was brought under 42 U.S.C. § 1983, alleging violations of the

Fourth and Fourteenth Amendments. See generally Doc. 22. The Court is unaware of any Eighth Circuit authority holding that plaintiffs can pursue a § 1983 claim based on a defendant's alleged failure to comply with the PREA. In the absence of any such binding authority, the Court bases its analysis on exigent circumstances under existing precedent without consulting the PREA.[4] See McSean v. Chamberlain, No. 4:23-CV-1225-CMS, 2026 WL 1579818, at *5 (E.D. Mo. June 3, 2026) ("[T]he Eighth Circuit has held that strip searches should be conducted by officers of the same sex, barring exigent circumstances.") (quoting Williams v. Fitzpatrick, 4:23CV00451-LPR-JTK, 2023 WL 9510837, at *2 (E.D. Ark. June 21, 2023) (citing Story v. Foote, 782 F.3d 968, 972 (8th Cir. 2015)); see also Belt, 2025 WL 2783498, at *5 (concluding that exigent circumstances permitted a female forensic examiner to swab the male plaintiff's genitals for DNA, where the plaintiff was suspected of raping a minor and the evidence was "easily disposable.") (citation omitted); Munywe v. Peters, No. 2:21-cv-05431-BJR, 2023 WL 1965991, at *6 (W.D. Wash. 2023) (finding that exigent circumstances existed for a female forensics technician to take swabs of the male plaintiff's genitals for DNA, where the plaintiff stood accused of rape).

Finally, Littleshield appeals to B.W.E.'s status as a minor as compelling a greater privacy interest, as evidenced by PREA, and various in and out-of-circuit cases he cites for the proposition. See generally Docs. 32 (citing, *inter alia*, Smook v. Minnehaha Cnty., 457 F.3d 806, 811 (8th Cir. 2006)); see generally Doc. 39. But even still, as Defendants correctly argue, age is only one of many factors this Court must balance when conducting its reasonableness inquiry. Doc. 50 at 2; Smook, 457 F.3d at 811–12; Winston v. Lee, 470 U.S. 753, 760–63 (1985). Considering the brief nature of Thankachan's intrusion on B.W.E., the professional and hygienic

[4] Furthermore, both parties agree that the PREA does not create a private cause of action and Littleshield did not bring any claims under the PREA. Docs. 32 at 19; Doc. 44 at 1–2; see generally Docs. 22, 32, 39, 51.

manner in which the swab was conducted, the justification—preserving evidence of the rape of a child, and the private setting in which the swab was conducted, the Court finds B.W.E.'s penile swab was reasonable, and thus, constitutional.

**IV. Order**

With no constitutional violation, Littleshield's § 1983 claims fail as a matter of law. Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999). It is therefore

ORDERED that Defendants' Motion for Summary Judgment, Doc. 24, is granted. Littleshield's claims are dismissed with prejudice. It is further

ORDERED that Littleshield's Motion for Partial Summary Judgment on Liability, Doc. 31, is denied.

DATED this 13th day of August, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE